UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

OKO INTERNATIONAL CO. d/b/a
ARAGON, a Florida corporation,

        *Plaintiff*,

v.

AUFFRET PARIS, a French entity; ARGON
PARIS DBA ARGON WATCHES, a French
entity; and THEO AUFFRET, an individual,

        *Defendants*.

_____/

Case No.

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff OKO International Co. hereby sues Defendants Auffret Paris, Argon Paris dba Argon Watches, and Theo Auffret and alleges as follows:

## PARTIES AND JURISDICTION

1. Plaintiff OKO International Co. d/b/a Aragon ("Aragon") is a Florida corporation with its principal place of business in Deerfield Beach, Florida.

2. On information and belief, Defendant Auffret Paris is an entity organized under the laws of France with its principal place of business in Paris, France.

3. On information and belief, Defendant Argon Paris is an entity organized under the laws of France with its principal place of business in Villennes-sur-Seine, France.

4. Defendant Theo Auffret is an individual who, on information and belief, resides in Paris, France.

0=

5.     This Court has subject matter jurisdiction over the claims in this complaint, which arise under the Trademark Laws of the United States pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a), and which involve a federal question pursuant to 28 U.S.C. § 1331.

6.     This Court has supplemental jurisdiction over the claims arising under Florida law pursuant to 28 U.S.C. § 1367(a) because the asserted state law claims are substantially related to the claims arising under the Trademark Laws of the United States. Further, this Court has supplemental jurisdiction because both the state and federal claims are derived from a common nucleus of operative facts, and considerations of judicial economy dictate that the state and federal issues be consolidated for a single trial.

7.     The Court has personal jurisdiction over Defendants because each of them have conducted and solicited business throughout the United States, including in Florida. Defendants have also knowingly directed and targeted their infringing activity at the United States and Florida. For example, Defendants launched a Kickstarter campaign soliciting donations from U.S. citizens and, on information and belief, residents of Florida. Defendants also maintain websites and social media pages accessible in English, and the webpage purports to accept orders from United States customers.

8.     This Court also had personal jurisdiction over Defendants under Rule 4(k)(2) of the Federal Rules of Civil Procedure because the claims stated in this complaint arise under federal law, Defendants, if not subject to this Court's jurisdiction, on information and belief are not subject to jurisdiction in any state's courts of general jurisdiction, and Defendants' contacts with and activities in the United States described herein make exercising jurisdiction consistent with the United States Constitution and its laws.

0=

9.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, or a substantial part of the property that is the subject of the action is situated in this judicial district.

## ARAGON'S BUSINESS AND TRADEMARKS

10.   Wing Liang ("Liang") is and has been the lead designer and CEO of Aragon since the birth of the company in 1991.

11.   Liang is driven by a constant desire to meet the expectations of the watch-loving community by crafting and selling timepieces that are visually and aesthetically astounding.

12.   Aragon seeks to challenge traditional timepiece making by creating and selling high-quality and contemporary lines of timepieces that remain affordable to every watch connoisseur, while still implementing designs and materials comparable to that of any leading luxury timepiece company.

13.   Since at least as early as 2016, Aragon has been using the trademark ARAGON, alone and in connection with other words and designs, (the "ARAGON mark") in connection with the sale of watches. A website screenshot depicting one such use is attached as Exhibit 1. This website is accessible at aragonwatch.com.

14.   Aragon's use of the ARAGON mark has been extensive, continuous, and substantially exclusive.

15.   Aragon has made, and continues to make, a substantial investment of time, effort, and expense in the production and promotion of the ARAGON mark.

16.   Aragon extensively promotes itself and its ARAGON mark through a variety of media, including via the Internet.

17. The ARAGON mark is unique and distinctive and, as such, designates a single source of origin.

18. As a result of Aragon's efforts and use, the ARAGON mark has come to be recognized by the public and members of the trade as being associated exclusively with Aragon.

19. Aragon expends substantial effort and expense to protect the ARAGON mark's distinctiveness in the marketplace. Aragon polices unauthorized use of the ARAGON mark by contacting unauthorized users of the ARAGON mark and demanding that they cease such use.

20. Based on Aragon's use, including the use described herein, Aragon owns extensive common law trademark rights in the ARAGON mark.

21. In addition to its extensive common law rights, Aragon owns a United States registration for the ARAGON mark. Specifically, Aragon owns U.S. Registration No. 4,948,000 for ARAGON for "timepieces; watches." Importantly, this registration claims a priority date at least as early as of July 6, 2015. A copy of this registration certificate is attached as Exhibit 2.

22. Having been widely promoted to the public, and having exclusively identified Aragon and its goods, the ARAGON mark symbolizes the tremendous goodwill associated with Aragon and Aragon's goods.

23. The ARAGON mark is a property right of incalculable value.

## DEFENDANTS' INFRINGING ACTIVITIES

24. Aragon is informed and believes, and on that basis alleges, that Defendants are designers, manufacturers, distributors, and/or retail sellers of watches and are in the business of designing, manufacturing, distributing, and selling watches.

25. Defendants recently began using the trademark ARGON and similar designations, such as ARGON WATCHES and MONTRES ARGON, which is French for ARGON

WATCHES, (collectively the "ARGON Marks") in connection with the sale of watches. Screenshots of Defendants' website, accessible at argonwatches.com, are attached as Exhibit 3, and a screenshot of one of Defendants' Instagram pages is attached as Exhibit 4.

26. Defendants also recently founded a Kickstarter project to raise funds to manufacture and sell watches in connection with one or more of the ARGON Marks. According to the project's website, a person who pledges a certain amount to the project is promised to receive an ARGON watch in or around December 2023. Screenshots of Defendants' Kickstarter page are attached as Exhibit 5. As can be seen from the screenshots, Defendants raised over $1 million dollars.

27. During the Kickstarter campaign, Aragon received at least one email from a third party who was attempting to contact Defendants about their ARGON watches. A copy of this email is attached as Exhibit 6.

28. Given this actual confusion, Aragon sent a cease-and-desist letter to Defendants Theo Auffret and Auffret Paris on June 14, 2023. A copy of this letter is attached as Exhibit 7. Aragon did not receive a timely response.

29. After sending the June 14, 2023 letter, Aragon submitted to Kickstarter a trademark violation form wherein Aragon provided Kickstarter with evidence of its prior rights in the ARAGON mark. In response to Aragon's submission, Kickstarter suspended Defendants' campaign. A screenshot stating that the campaign has been suspended because of an intellectual property dispute is attached as Exhibit 8. Aragon understands, however, that this suspension is only temporary and that funds from the campaign may soon be disbursed.

0=

30. After the Kickstarter campaign was suspended, Aragon received a message from one of the project's backers who mistakenly thought they were contacting Defendants about their ARGON watches project. A copy of this email is attached as Exhibit 9.

31. After receiving this email, Aragon again sent a letter on June 22, 2023 to Defendants demanding that they cease use of the ARGON Marks. A copy of this letter without enclosures is attached as Exhibit 10.

32. Defendant Theo Auffret also caused to be filed with the United States Patent and Trademark Office ("USPTO") U.S. Trademark Application Serial No. 79/365,272 for MONTRES ARGON for jewelry and timepieces in Class 14. "MONTRES" is French for "WATCHES" causing the mark to essentially translate on information and belief to ARGON WATCHES.

33. At no time was Theo Auffret authorized by Aragon to file this trademark application.

34. Aragon therefore filed a letter of protest with the USPTO against the application for MONTRES ARGON. This letter of protest was granted, in part, on the basis there was a likelihood of confusion between MONTRES ARGON and Aragon's own registered ARAGON mark. The MONTRES ARGON application is currently pending examination.

35. Aragon is informed and believes, and on that basis alleges, that Defendant Theo Auffret is a principal of both Defendant Auffret Paris and Defendant Argon Paris.

36. Aragon is informed and believes, and on that basis alleges, that Defendant Auffret Paris has more than one brick-and-mortar location in Paris, France and its environs.

37. Aragon is informed and believes, and on that basis alleges, that for one of Auffret Paris's locations, it shares office space with Argon Paris.

38. Aragon is informed and believe, and on that basis alleges, that Auffret Paris and Argon Paris share one or more employees.

39. Aragon is informed and believed, and on that basis alleges, that Auffret Paris and Argon Paris are either alter egos of one another or act in direct concert and participation with one another.

40. Aragon is informed and believes, and on that basis alleges, that at all times relevant to the allegations in this complaint, Theo Auffret was the moving, acting, driving, and conscious force behind all conduct of Auffret Paris and Argon Paris and transacts and has transacted business on behalf of both companies.

41. Defendants are not authorized to use, offer for sale, or sell any goods bearing the ARAGON mark or any similar designation, such as the ARGON Marks, or to hold themselves out as being affiliated with Aragon in any way.

42. Defendants are not licensed to use the ARAGON mark.

43. Defendants had constructive notice of Aragon's exclusive rights in its federally registered ARAGON mark pursuant to 15 U.S.C. § 1072.

44. Defendants have continued to advertise and promote their goods and services using the ARGON Marks despite Aragon's demand that they cease doing so.

## HARM TO ARAGON AND THE GENERAL PUBLIC

45. Defendants' unauthorized use of the ARGON Marks, or any similar designation thereto, creates a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of Defendants' products and is likely to falsely suggest a sponsorship, connection, license, or association with Aragon.

46. Defendants' activities have irreparably harmed and, if not enjoined, will continue to irreparably harm Aragon and the ARAGON mark.

47. Defendants' unauthorized use of the ARGON Marks deprives Aragon of sales and of the ability to control the quality of goods in connection with which its mark is used.

48. Defendants' activities have irreparably harmed, and if not enjoined, will continue to irreparably harm the general public, who has an inherent interest in being free from confusion, mistake, and deception.

## FIRST CLAIM FOR RELIEF

### (Trademark Infringement Pursuant to 15 U.S.C. § 1114(1))

49. Aragon realleges and incorporates by reference each of the allegations contained in Paragraphs 1 through 48 of this complaint as if fully set forth here.

50. Defendants' use in commerce of the ARGON Marks and variations thereof is likely to cause confusion or mistake or to deceive the relevant public that Defendants' goods are authorized, sponsored, or approved by—or are affiliated with—Aragon.

51. The above-described acts of Defendants constitute trademark infringement in violation of 15 U.S.C. § 1114(1), entitling Aragon to relief.

52. Defendants have unfairly profited from the trademark infringement alleged.

53. By reason of Defendants' acts of trademark infringement, Aragon has suffered damage to the goodwill associated with the ARAGON mark.

54. Defendants' acts of trademark infringement have irreparably harmed and, if not enjoined, will continue to irreparably harm Aragon and its federally registered trademark.

55. Defendants' acts of trademark infringement have irreparably harmed and, if not enjoined, will continue to irreparably harm the general public, which has an interest in being free from confusion, mistake, and deception.

56. By reason of Defendants' acts, Aragon's remedy at law is not adequate to compensate it for the injuries inflicted by Defendants. Accordingly, Aragon is entitled to a temporary restraining order as well as preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

57. By reason of Defendants' willful acts of trademark infringement, Aragon is entitled to damages, and those damages should be trebled pursuant to 15 U.S.C. § 1117.

58. This is an exceptional case making Aragon eligible for an award of attorneys' fees pursuant to 15 U.S.C. § 1117.

## SECOND CLAIM FOR RELIEF

**(Trademark Infringement, Unfair Competition, and False Designation of Origin Pursuant to 15 U.S.C. § 1125(a))**

59. Aragon realleges and incorporates by reference each of the allegations contained in Paragraphs 1 through 58 of this complaint as if fully set forth here.

60. Defendants' use in commerce of the ARGON Marks and variations thereof is likely to cause confusion or mistake or to deceive the relevant public that Defendants' goods are authorized, sponsored, or approved by—or are affiliated with—Aragon.

61. The above-described acts of Defendants constitute trademark infringement, unfair competition, and false designation of origin in violation of 15 U.S.C. § 1125(a), entitling Aragon to relief.

62. Defendants have unfairly profited from the trademark infringement alleged.

0=

63. By reason of Defendants' acts of trademark infringement, Aragon has suffered damage to the goodwill associated with the ARAGON mark.

64. The above-described acts of Defendants have irreparably harmed and, if not enjoined, will continue to irreparably harm Aragon and the ARAGON mark.

65. Defendants' acts of trademark infringement have irreparably harmed and, if not enjoined, will continue to irreparably harm the general public, which has an interest in being free from confusion, mistake, and deception.

66. By reason of Defendants' acts, Aragon's remedy at law is not adequate to compensate it for the injuries inflicted by Defendants. Accordingly, Aragon is entitled to a temporary restraining order as well as preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

67. By reason of Defendants' willful acts of trademark infringement, Aragon is entitled to damages, and those damages should be trebled pursuant to 15 U.S.C. § 1117.

68. This is an exceptional case making Aragon eligible for an award of attorneys' fees pursuant to 15 U.S.C. § 1117.

## THIRD CLAIM FOR RELIEF

**(Florida State Statutory and Common Law Unfair Competition)**

69. Aragon realleges and incorporates by reference each of the allegations contained in Paragraphs 1 through 68 of this complaint as if fully set forth here.

70. Defendants' willful, knowing, and unauthorized promotion, advertisement, sale, and offering for sale of infringing goods causing confusion as to the source of the goods and causing harm to Aragon and its goodwill is an unlawful appropriation in Aragon's exclusive rights in the ARAGON mark and variations thereof and constitutes deceptive and unfair practices.

71. Such deceptive and unfair practices have deprived Aragon of sales of its own goods in connection with the ARAGON mark and have therefore actually and proximately caused actual damage to Aragon.

72. Such acts constitute deceptive and unfair trade practices and unfair competition under Florida's Deceptive and Unfair Trade Practices Act, Florida Statute § 501.202, *et seq.*, and under the common law of the State of Florida.

73. Pursuant to Florida Statute § 501.211, Aragon is entitled its actual damages plus its attorneys' fees and court costs.

74. Due to Defendants' conduct, Aragon has suffered and will continue to suffer irreparable harm. It would be difficult to ascertain the amount of money damages that would afford Aragon adequate relief at law for Defendants' acts. Accordingly. Aragon is entitled to preliminary and permanent injunctive relief.

## **FOURTH CLAIM FOR RELIEF**

**(For Direct and Vicarious Liability as to Defendants Theo Auffret – All Counts)**

75. Aragon realleges and incorporates by reference each of the allegations contained in Paragraphs 1 through 74 of this complaint as if fully set forth here.

76. As the moving, active, and conscious force behind Defendants' unlawful conduct, Defendant Theo Auffret is jointly and severally liable with Defendants Auffret Paris and Argon Paris under all counts of this complaint.

## **REQUEST FOR RELIEF**

WHEREFORE, Aragon requests judgment against Defendants as follows:

1. That the Court enter judgment against Defendants that Defendants have:

    a. infringed the rights of Aragon in the ARAGON trademark, which has been federally registered, in violation of 15 U.S.C. § 1114(1);

    b. infringed the rights of Aragon in the ARAGON trademark in violation of 15 U.S.C. § 1125(a); and

    c. engaged in unfair competition and deceptive trade practices.

2. That each of the above acts was willful.

3. That the Court issue a preliminary and permanent injunction enjoining and restraining Defendants and their agents, servants, employees, successors, and assigns, and all other person acting in concert with or in conspiracy with or participation with Defendants, from:

    a. engaging in any infringing activity, including advertising, promoting, marketing, selling, and offering for sale any goods or services in connection with the ARGON Marks or any similar mark;

    b. engaging in any unfair competition with Aragon;

    c. engaging in any deceptive acts;

    d. registering, or filing to register, with the USPTO the ARGON Marks or any confusingly similar designation.

4. That Aragon be awarded damages for Defendants' trademark infringement and unfair competition and that these damages be trebled due to Defendants' willfulness, in accordance with the provisions of 15 U.S.C. § 1117.

5. That Aragon be awarded all profits resulting from Defendants' infringement of Aragon's rights and by means of Defendants' unfair competition with Aragon.

6. That Defendants be ordered to account for and disgorge to Aragon all amounts by which Defendants have been unjustly enriched by reason of the unlawful acts complained of.

0=

7.     That the Court enter a temporary restraining order and preliminary injunction preventing the funds from Defendants' Kickstarter campaign from being disbursed to them pending resolution of this dispute.

8.     That Aragon be awarded an amount sufficient to reimburse Aragon for the costs of corrective advertising.

9.     That Aragon be awarded punitive damages so as to make Defendants an example to the community for their unlawful acts.

10.    That Aragon be awarded prejudgment interest on all damages.

11.    That the Court award Aragon its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and any other applicable provision of law.

12.    That the Court award Aragon its costs of suit incurred herein.

13.    That the Court award such other and further relief as the Court may deem just and proper.

| | |
|---|---|
| DATED:  June 27, 2023 | */s/ John N. Muratides*<br>JOHN N. MURATIDES, ESQUIRE<br>Florida Bar No. 332615<br>Email:  jmuratides@stearnsweaver.com<br>Email:  lwade@stearnsweaver.com<br>STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.<br>401 E. Jackson Street, Suite 2100 (33602)<br>Post Office Box 3299<br>Tampa, Florida  33601<br>Tel.: 813-223-4800<br>Fax: 813-222-5089<br><br>and<br><br>TUCKER ELLIS LLP<br>Howard A. Kroll (*Pro Have Vice Motion Forthcoming*)<br>Email:  howard.kroll@tuckerellis.com<br>Steven E. Lauridsen (*Pro Have Vice Motion Forthcoming*)<br>Email:  steven.lauridsen@tuckerellis.com<br>515 South Flower Street, 42nd Floor<br>Los Angeles, CA 90071<br>Tel.: 213.430.3400<br>Fax: 213.430.3409<br><br>Attorneys for Plaintiff<br>OKO INTERNATIONAL CO. |

0=

**DEMAND FOR A JURY TRIAL**

    Plaintiff OKO International Co. hereby requests a jury trial on all issues so triable.

DATED:  June 27, 2023

*/s/ John N. Muratides*
JOHN N. MURATIDES, ESQUIRE
Florida Bar No. 332615
Email:  jmuratides@stearnsweaver.com
Email:  lwade@stearnsweaver.com
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
401 E. Jackson Street, Suite 2100 (33602)
Post Office Box 3299
Tampa, Florida  33601
Tel.: 813-223-4800
Fax: 813-222-5089

and

TUCKER ELLIS LLP
Howard A. Kroll (*Pro Have Vice Motion Forthcoming*)
Email:  howard.kroll@tuckerellis.com
Steven E. Lauridsen (*Pro Have Vice Motion Forthcoming)*
Email:  steven.lauridsen@tuckerellis.com
515 South Flower Street, 42nd Floor
Los Angeles, CA 90071
Tel.: 213.430.3400
Fax: 213.430.3409

Attorneys for Plaintiff
OKO INTERNATIONAL CO.